**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| JENA DEMERLY on behalf of GID,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | CAUSE NO.: 3:25-CV-612-TLS |

**OPINION AND ORDER**

The Plaintiff, Jena Demerly on behalf of GID, a minor, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. For the reasons set forth below, the Court affirms the decision of the Administrative Law Judge.

**PROCEDURAL BACKGROUND**

On January 31, 2023, an application for supplemental security income benefits for GID, a minor child, was filed, alleging a disability onset date of January 1, 2013. AR 185–86, ECF No. 6. After the claim was denied initially and on reconsideration, the Administrative Law Judge (ALJ) held a hearing and found that GID was not disabled at any time from the application date through the date of the ALJ's decision. AR 19–45. The Appeals Council denied the Plaintiff's request for review. AR 1–6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g), and this appeal is fully briefed. *See* AR 10, 14, 15.

## THE ALJ'S DECISION

To be considered disabled, a child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The ALJ follows a three-step inquiry in evaluating a child's claim for supplemental security income under the Social Security Act. *See* 20 C.F.R. § 416.924. The claimant bears the burden of proof at each step. 20 C.F.R. § 416.912(a); *Crystal B. on behalf of R.A.R.T.*, No. 2:25-CV-337, 2026 WL 2286874, at *2 (S.D. Ind. July 19, 2026) (citing cases).

First, the ALJ looks to whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a), (b). Here, the ALJ found that GID had not engaged in substantial gainful activity since the application date. AR 23.

Second, the ALJ considers whether the claimant has a medically determinable "severe" impairment or combination of impairments. 20 C.F.R. § 416.924(a), (c). The ALJ found that GID has the severe impairments of autism spectrum disorder, attention-deficit hyperactivity disorder, anxiety, major depressive disorder, hypertension, functional constipation, polycystic kidney, chronic nonallergenic rhinitis, and coarctation of the aorta. AR 23.

Third, the claimant's severe impairments must meet, medically equal, or functionally equal a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.924(a), (d); 20 C.F.R. § 416.926a(a). At this step, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the listings. AR 23–27. In assessing functional equivalence, the ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and

(6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To be found disabled, the ALJ must find an "extreme" limitation in one domain or a "marked" limitation in two domains. *Id.* § 416.926a(a), (d). A claimant has a "marked limitation" in a domain when her impairment(s) interferes seriously with her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A claimant has an "extreme limitation" in a domain when her impairment(s) interferes very seriously with her ability to independently initiate, sustain, or complete activities. The ALJ found that GID does not have an impairment or combination of impairments that functionally equals the severity of the listings, finding that GID has "no limitation" in acquiring and using information; "less than marked limitation" in attending and completing tasks, interacting and relating with others, in moving about and manipulating objects, and in health and physical well-being; and a "marked limitation" in the ability to care for himself. AR 27–39. As a result, the ALJ found that the Plaintiff is not disabled. AR 39.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

**ANALYSIS**

In seeking reversal of the ALJ's decision, the Plaintiff argues that the ALJ played doctor by interpreting raw medical data and failing to develop the record. More specifically, the Plaintiff criticizes the ALJ for finding GID to have greater limitations than those opined by the state agency reviewing physicians when the ALJ considered evidence added to the record after the physicians issued their opinions. The Plaintiff argues that the ALJ should have obtained an additional medical evaluation of the full record rather than interpreting the additional evidence herself. However, the Plaintiff does not identify any portions of the record that the ALJ failed to

address or that support greater limitations, and the Court finds that the ALJ's decision is supported by substantial evidence.

The Court begins with a summary of the evidence the ALJ considered as presented by the Commissioner. The ALJ considered the hearing testimony, the reports from the Plaintiff's mother, medical records, and the prior administrative medical findings. AR 28–39. The ALJ considered GID's mother's report that he got distracted easily; he made socially inappropriate comments towards his peers; and, since being homeschooled, he was functioning better and not overstimulated or overwhelmed. AR 32–33; *see* AR 53–55, 63–64. The ALJ recognized that GID's mother noted he went to Sky Zone and participated in extreme archery. AR 35–36; *see* AR 59. The ALJ noted that GID had explosive outbursts once per day, which were triggered by changes in routine, transitioning too quickly, and overstimulation. AR 37; *see* AR 56, 65–66. GID did not like the sensation of bathing or brushing his teeth. AR 37; *see* AR 60.

GID participated in occupational therapy for fine motor delays impacting self-help skills, autism, anxiety, and sensory processing disorder. AR 35 (citing Ex. 26F (AR 1210–45)); AR 37 (citing Ex. 18F (AR 774–869)). His occupational therapist observed that he had poor attention to activities, but he was able to follow multistep instructions and show appropriate responses to stimuli. AR 32 (citing Ex. 26F); *see* AR 1210, 1232. Treatment records indicated he had a flat affect and flat tone of voice but was cooperative. AR 34 (citing Exs. 1F, 18F, 26F); *see* AR 296, 782, 793–94, 1230, 1232. His pragmatic skills fell outside the average range of his same-age peers, AR 34 (citing Ex. 4F/23–24 (AR 510–11)); *see* AR 1237, and he had moderate language deficits, AR 34 (citing Ex. 26F/29 (AR 1237)); *see* AR 1243. Skilled occupational therapy services were recommended to increase his ability to complete written work and tie his shoes. AR 35 (citing Ex. 26F); *see* AR 1234. He had "meltdowns" and lacked the tools needed to

handle stressful situations. AR 37 (citing Ex. 18F); *see* AR 780. He was easily frustrated and exploded quickly, and he was given home exercises. AR 37 (citing Ex. 26F); *see* AR 793, 797.

GID was diagnosed with coarctation of the aorta, and underwent a coarctation stent placement, which was complicated by a hematoma at the site and a right common femoral artery (CFA) occlusion. AR 38 (citing Exs. 18F, 20F); *see* AR 789, 879–80. He underwent a right CFA thromboembolectomy with vein patch angioplasty repair. AR 38 (citing Exs. 18F, 20F); *see* AR 789, 879–80. He had a wound vac in place following the procedure, but it was later removed. AR 38 (citing Exs. 18F, 20F); *see* AR 789, 880. At a follow-up appointment later that month, he had no chest pain, shortness of breath, palpitations, leg pain, or syncope. AR 38 (citing Exs. 18F, 20F); *see* AR 1072–73. Approximately six months later, he reported that he continued to feel great, and a follow-up in one year was recommended. AR 38 (citing Ex. 22F); *see* AR 1065–67. The ALJ also discussed that GID had hypertension, was treated by a nephrologist, and was prescribed medication. AR 38 (citing Exs. 18F, 22F, 23F); *see* AR 779, 1065–66, 1081, 1087. Treatment records indicated that GID had been doing well, took his medication regularly, was asymptomatic, and had improved blood pressure. AR 38 (citing Ex. 18F/84–85 (AR 857–58)). GID was also treated for chronic nonallergic rhinitis, and his treatment was limited to medication. AR 38 (citing Ex. 18F); *see* AR 784–88. The gastroenterologist he saw for functional constipation indicated that he had fewer accidents that were not as frequent. AR 37 (citing Ex. 25F); AR 39 (citing Ex. 18F/52 (AR 825)).

The two state agency reviewing physicians were Dr. Roush and Dr. Brill. On April 24, 2023, state agency consultant Dr. Steven E. Roush reviewed GID's available medical records and opined that GID had "no limitation" in acquiring and using information, attending and completing tasks, and moving about and manipulating objects. AR 71. Dr. Roush opined that GID had "less than marked limitation" in interacting and relating with others, caring for himself,

and health and physical well-being. AR 71–72. However, when forming this opinion, Dr. Roush only had the benefit of reviewing exhibits 1F, 2F, 3F, and 4F. AR 70. On October 23, 2023, state agency consultant Dr. M. Brill reviewed the same available medical records and concurred with Dr. Roush's opinion. AR 70, 75–80.

The ALJ considered and found these opinions partially persuasive, finding that the opinions were not restrictive enough to fully account for the totality of GID's impairments. AR 29 (citing Ex. 2A (AR 69–73), 4A (AR 75–80)). The ALJ explained that the reviewing physicians' findings were somewhat consistent with the record, which showed that GID's physical impairments were largely under control and he was doing well in school. *Id.* But the ALJ noted that the findings were inconsistent with evidence showing GID had toileting accidents, had difficulty self-regulating emotions, was easily frustrated, was unable to tie his shoes, and had difficulty with balance. *Id.* The ALJ explained that greater limitations were consistent with the evidence received at the hearing level, particularly in the domains of attending and completing tasks and caring for himself. *Id.*

In this appeal, the Plaintiff argues that reversal and remand is required because the ALJ played doctor by interpreting the medical records submitted after Dr. Roush and Dr. Brill gave their opinions without the benefit of an updated medical opinion. The Seventh Circuit Court of Appeals has held that reversal is required when an ALJ substitutes her own medical judgment and disregards relevant medical evidence. *See Dixon v. Massanari*, 270 F.3d 1171, 1177–78 (7th Cir. 2001) ("The cases in which we have reversed because an ALJ impermissibly 'played doctor' are *ones in which the ALJ failed to address relevant evidence*." (emphasis added) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Green v. Shalala*, 51 F.3d 96, 101–02 (7th Cir. 1995); *Hayes v. R.R. Ret. Bd.*, 966 F.2d 298, 303 (7th Cir. 1992))); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence

containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 67, 680 (7th Cir. 2014))). In *Dixon*, the court found that the ALJ had thoroughly discussed the medical evidence in making her decision and had not played doctor. 270 F.3d at 1178; *cf. Sherry R. v. Saul*, No. 1:20-CV-1116, 2021 WL 1884426, at *5 (S.D. Ind. May 11, 2021) (finding that records obtained after the consultative examiners' opinions that were not considered by the ALJ suggested the possibility of greater limitations not adopted by the ALJ).

Here, the Plaintiff has not attempted to show that the ALJ disregarded or failed to address relevant evidence. The Plaintiff's only discussion of the additional records is a general statement that the records included specialized medical evidence from GID's cardiologist, nephrologist, gastroenterologist, and occupational therapist. Pl. Br. 5, ECF No. 10 (citing AR 1051–63, 1064–79, 1080–1162, 1165–1208, 1209–45); *see id.* at 7. While the Plaintiff notes the new exhibits contain 598 pages of medical evidence and constitute sixty-nine percent of the record, the Plaintiff does not discuss a single page of the exhibits to show that the ALJ failed to address relevant evidence, that greater limitations are supported by the record, or that the opinion of a medical expert is required. Pl. Br. 7. "It is not enough to criticize the ALJ's decision . . . . [The Plaintiff] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024); *see Thorlton v. King*, 12 F.4th 1078, 1080 (7th Cir. 2025) ("[A]s we have underscored time and again, a claimant bears the burden of proving their disability." (citations omitted)).

The Plaintiff also argues that the ALJ should have ordered a consultative examination under 20 C.F.R. § 416.919a when additional specialized medical evidence was submitted after the state-agency physicians' opinions. A consultative examination is normally required in

circumstances such as when there is an inconsistency in the evidence, specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established. 20 C.F.R. § 416.919a(b). However, an "ALJ is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (citations omitted); *see Conrad v. Berryhill*, No. 16 CV 8624, 2017 WL 2424221, at *6 (N.D. Ill. June 5, 2017) ("But an ALJ is given latitude to decide whether a claimant's medical evidence is insufficient and whether a consultative examination would fill an apparent gap." (citing *Skinner*, 478 F.3d at 844). "[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citation omitted); *see Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (declining to require a medical source statement from the consultative examiner).

Last, the Plaintiff argues that, at a minimum, an ALJ must articulate her analysis of the evidence to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green*, 51 F.3d at 101. The only such example offered by the Plaintiff is the assertion that the ALJ cannot understand how GID's cardiac catheterization intervention with stent replacement for coarctation aorta surgery would affect GID's functional limitations. However, as noted by the Commissioner, the ALJ discussed GID's aorta surgeries and considered that, at a follow-up appointment after the procedures, GID had no chest pain, shortness of breath, palpitations, leg pain, or syncope. AR 38 (citing Exs. 18F, 20F); *see* AR 1072–73. And the ALJ noted that six months after the procedure, GID reported he continued to feel great and that a one-year follow-up was recommended. AR 38 (citing Ex. 22F);

*see* AR 1065–67. As set out in detail above and unchallenged by the Plaintiff, the ALJ provided a thorough explanation for how the evidence leads to her conclusion that is sufficient for the Court to assess the validity of the agency's ultimate findings and afford meaningful appellate review. *See Warnell v. O'Malley*, 97 F.4th 1050, 1051, 1054 (7th Cir. 2024) ("All that we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful review." (quoting *Moore*, 743 F.3d at 1121)). Substantial evidence supports the ALJ's decision, and the Court will not reweigh the evidence.

**CONCLUSION**

For the reasons set forth above, the Court hereby DENIES the relief sought in the Plaintiff's Opening Brief [ECF No. 10] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Judgment is entered in favor of the Defendant Commissioner of Social Security and against the Plaintiff Jena Demerly on behalf of GID, who shall take nothing by way of the complaint.

SO ORDERED on August 21, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT